**MARTIN v. FEDERAL SECURITY AGENCY et al.**

No. 9652.

United States Court of Appeals
Third Circuit.

Argued Feb. 25, 1949.
Decided April 4, 1949.

Leonard B. Zeisler, of Washington, D. C. (H. G. Morison, Asst. Atty. Gen., Owen M. Burns, U. S. Atty., of Pittsburgh, Pa., Edward H. Hickey, Sp. Asst. to Atty. Gen., and Isidor Lazarus, Atty., Department of Justice, of Arlington, Va., on the brief), for appellants.

William B. Washabaugh, Jr., of Erie, Pa., for appellees.

J. Louis Monarch, of Washington, D. C., (Leonard A. Spalding, Jr., Alfred J. Mc-Dowell, Thomas C. Egan and Morgan, Lewis & Bockius, all of Philadelphia, Pa., on the brief), for amicus curiae.

Before GOODRICH, WALLER, and McLAUGHLIN, Circuit Judges.

WALLER, Circuit Judge.

Carl P. Martin, deceased, husband of Hannah and father of Joseph, and Patricia L., Martin, had worked for Western Stevedoring Co., a corporation from January 1, 1937, until the date of his death, December 31, 1944. During his employment the Stevedoring Company had paid the social security taxes required of such an employer and otherwise complied with all necessary requirements for companies that are neither carriers nor controlled by carriers.

The Board admits that Martin would have been fully insured and his widow and children entitled to the benefits under the Act for which they have sued the Social Security Board were it not for the fact that Western Stevedoring Co., by its contract with the Pennsylvania Railroad Company, subjected itself to the control of the Railroad Company and, therefore, the Stevedoring Company was an "employer" under Sec. 1532, Internal Revenue Code, 26 U.S. C.A. § 1532, rather than under the Social Security Act, Title 42 U.S.C.A. §§ 409(a) and 409(b) (9). It contends that deceased's services were excluded by Sec. 209(b) of the Social Security Act from the term "employment" as defined by that Act, 42 U.S. C.A. § 409(b); that the remuneration paid him did not constitute "wages" as defined by Sec. 209(a), 42 U.S.C.A. § 409(a), and that even though he had worked for the Stevedoring Company a total of thirty calendar quarters and had been paid at least $50 in each calendar quarter, he was neither a fully, nor currently, insured individual at the time of his death.

The lower Court held that under the contract the Stevedoring Company was an independant contractor over whom the Railroad Company did not have such right of direction and control as would make the deceased wage earner an employee of a carrier-controlled employer as defined by Sec. 1532 of Title 26 U.S.C.A., and excluded from the benefits of the Social Security Act by § 209(b).

The facts and the reasons for the holding of the lower Court are fully and carefully set out in an opinion reported at 73 F.Supp. 482–495 and need not be repeated here.

We agree with the lower Court that the Stevedoring Company was an independent contractor and that there was an absence of such control, or the right to such control, as would have brought the Stevedoring Company under Sec. 1532(a), Internal Revenue Code, 26 U.S.C.A. § 1532(a). Section 1, Railroad Retirement Act of 1937, Title 45 U.S.C.A. Chapter 9, § 228(a); Sec. 1532(a), Internal Revenue Code;[1] also

---

[1] Sec. 1532(a) of Title 26 U.S.C.A., is as follows:

"(a) Employer. The term 'employer' means any carrier (as defined in subsection (h) of this section), and any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad, and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the property or operating all or any part of the business of any such employer: * * *."

Sec. 209(b), Social Security Act.[2] We deem it unnecessary to add anything further to the discussion of the Court below as to the failure of the contract to confer upon the Railroad Company the right to control the manner of the doing of the work in question and the effect of such failure, other than to say that we agree with the lower Court that the right to cancel the contract and the right of such supervision as the Railroad Company had were either aimed at the result or were merely incidental to the quality and completeness of performance rather than the manner thereof, and altogether were insufficient to bring the Stevedoring Company within the provisions of the Railroad Retirement Act or the Carrier Taxing Act, 45 U.S.C.A. § 261 et seq., to the exclusion of the Social Security Act.

[2] We are favorably impressed with the contention stressed in the brief of amicus curiae that the word "controlled" in the language of the Railroad Retirement Act and the Carrier Taxing Act, providing that "any *company* which is directly or indirectly *owned* or *controlled* by one or more * *. * ' carriers or under common control therewith * * *" (Italics added.) has reference to the controls of a company attained through financial arrangements, stock ownership, voting trusts, interlocking directorates, and other corporate and business devices which have regard to its management, business policies, or corporate functions. Railroad Retirement Board Regulation 202.4 defines such control as "the means, methods or circumstances, irrespective of stock ownership, to direct * * * the policies and business of such a company * * *."

■ Such controls have no relation to the details, or manner of performance, of the work that such company undertakes. If the control of the work, the manner of doing the work, or the power of the carrier under a contract to continue, or to terminate, the work was intended to be the complete tests, why was the statute made applicable only to "any company" and not to any individual who might enter into such a contract with a railroad company except

to an individual in possession of the property or operating the business of "any such employer"? The term "such employer" can only refer to "company" mentioned in the first part of the section.

Manifestly, an individual is not a "company" that a carrier could "own," and concededly, the Railroad Company had no financial interest in, or corporate control whatsoever over, the Stevedoring Company.

The phrase "company which is directly or indirectly owned or controlled by one or more of such carriers" contemplates a present, legal, power of control and is not synonymous with, or embracive of, the phrase "any company which *could be controlled* by threats of cancellation, or by cancellation, of its contract by the carrier."

■ We think that the Court can take judicial knowledge of the fact that there are parties, both individual and corporate against whom such threats would not produce control. The carrier might also, by the use of machine guns and thugs, control a company, but Congress intended no such control as that. Whether or not the power of cancellation of the contract, or threats of cancellation of the contract, would result in achievement of control of a company by the carrier, would, we think, depend considerably upon human equations and upon whether or not the contract was one that the company was anxious to keep alive. We can hardly attribute to Congress an intent to predicate the collection of taxes, as well as the security of widows and orphans, upon any such equations or vagaries.

Suppose, for instance, the Railroad had said to the president of one of its contracting companies: "Mr. Avery, if you do not do as we tell you as to the operation of your company and its policies, we are going to cancel its contract," and that thereupon Mr. Avery, the president, had answered : "Cancel your contract and see if we care."

Would that be the kind of control that Congress had intended to use as the basis for collecting, or not collecting, taxes? Must the payment of benefits to widows and orphans depend upon either the forbearance or the belligerency of the carrier

---

2 Subsection 409(b) (9), Title 42 U.S. C.A., being § 209(b) (9) of the Social Security Act, excepts from the term "employment"

"Service performed by an individual as an employee or employee representative as defined in section 1532 of Title 26".

or upon the hard-headedness or fearlessness, or the lack thereof, of the company management? These questions seem to furnish their own answers.

■ We do not think that the Congress intended to exclude widows and orphans of the employees of independent contractors of carriers from the benefits of the Act, but only that it sought by Sec. 1532, and kindred sections, to prevent carriers from escaping the obligations laid upon them in the Railroad Retirement Act and the Carrier Taxing Act by the devices of organizing separate and distinct companies or contracting with companies over whose business policies and operations it, by various means, had the definite legal right to control.

In view of the fact that this method of doing business was in effect long before legislation was enacted for the imposition of the taxes involved, and that the right of cancellation, as well as such supervisory powers as were reserved in the Railroad, were provisions not theretofore uncommon to such contracts, and in the absence of any showing that the arrangement between the Railroad Company and the Stevedoring Company was a device to aid the carrier in tax avoidance, it would seem that the findings of the Board will not be sustained and the judgment of the lower Court will be affirmed.